923 F.2d 870
 17 U.S.P.Q.2d 1894
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re Larry A. WANK, Joseph G. Braitling and Marie Kaczenski.
 No. 90-1346.
 United States Court of Appeals, Federal Circuit.
 Nov. 15, 1990.
 
 Before PLAGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and LOURIE, Circuit Judge.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 Larry A. Wank, Joseph G. Braitling, and Marie Kaczenski (Wank) appeal from the September 19, 1989, decision of the Patent and Trademark Office Board of Patent Appeals and Interferences (Board), Appeal No. 89-2829, affirming the rejection of claims 14-21 (all of the claims remaining in the case) in patent application serial number 053,165 as unpatentable under 35 U.S.C. Sec. 103. We reverse.
 
 DISCUSSION
 
 2
 The invention claimed is a process for densifying ferrite type ceramic parts by hot isostatic pressing.[1] The Board sustained the examiner's rejection of the claims under Section 103 based on a single prior art reference, Hardtl et al., U.S. Patent 3,853,973 (Hardtl).
 
 
 3
 The principal difference between Wank's invention and the prior art process is that Wank densifies the ceramics in a sealed vessel with a non-equilibrium, oxygen-rich atmosphere, whereas Hardtl, on the other hand, teaches pressing[2] in a "flow-through" container and provides that "a given partial oxygen pressure is required so as to maintain the desired oxygen content of the ferrite at the required level." The oxygen-rich atmosphere of Wank causes an oxide layer to form on the ferrite ceramic and preserve the ceramic's magnetic properties. Hardtl preserves the magnetic properties of the ferrite ceramic by controlling the partial pressure of oxygen to maintain equilibrium during pressing.
 
 
 4
 The Patent and Trademark Office (PTO) argues that Wank's process does not represent an advancement in the art, that the process is a simpler process that produces an impure material, and that it would have been obvious to one of ordinary skill in the art. Hardtl discloses that it is well-known in the art to densify ferrite parts in an inert gaseous atmosphere at elevated temperature and pressure. Hardtl also suggests the introduction of oxygen to control the ferrite composition during the process. However, Hardtl does not teach or suggest densifying a sealed container with an oxygen-rich atmosphere, without regard to the partial pressure of oxygen during the reaction. At the hearing, the PTO argued that the rejection was proper on "common sense" grounds, despite the lack of documentation in Hardtl to suggest that Wank's invention would have been obvious.
 
 
 5
 We find no suggestion in Hardtl, nor can any reasonable inference be drawn therefrom, to conduct the process in a sealed vessel with a fixed amount of oxygen to leave a layer of oxidation on the ceramic in order to control the quality of the ferrite ceramic. Hardtl teaches that one should control the quality of ferrite ceramic by controlling the partial pressure of oxygen. The objective of controlling the quality of the ceramic is thus achieved by Wank differently from the way in which Hardtl achieves it, i.e., by means of the oxide layer, and nothing in Hardtl suggests the use of this different means.
 
 
 6
 In sum, we do not think that Hardtl would have made the claimed invention obvious. The facts that a process may not be an advancement in the art, may be a simpler process than a prior art process, or may produce an impure material, even if correct, do not necessarily make it obvious. See Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1390-91, 7 USPQ2d 1222, 1225 (Fed.Cir.), cert. denied, 488 U.S. 956 (1988) (patent statute does not require inventions to be an improvement in the art, or more complex than the prior art, to be nonobvious). We do not find that the PTO has shown that the change from the prior art to the claimed process is mere "common sense." An oral assertion by the examiner or by counsel at hearing requires support in the record, which we do not find here, to indicate that it would have been obvious to change the Hardtl process by using a non-equilibrium oxygen-rich atmosphere in a sealed vessel to create an oxide layer.
 
 
 
 [1]
 Claim 14 is illustrative and reads as follows:
 
 
 [14]
 A process for densifying a sintered ceramic part comprising
 placing the sintered part in a sealed container,
 introducing an atmosphere containing a fixed amount of oxygen within a critical range into said container, said fixed amount being that which, at the conclusion of the process, leaves a layer of oxidation on the ceramic without substantially affecting the chemistry of the ceramic, the remainder of the atmosphere being substantially inert,
 raising the temperature to a constant level over 1100?C,
 raising the pressure to a constant level over 13,000 PSI,
 soaking the part at said constant temperature and pressure for at least one hour,
 cooling said ceramic at a rate not exceeding 500?C per hour.
 
 
 [2]
 We understand that the terms "densify" and "press" are equivalent for purposes of our analysis